1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOCORRO GALLEGOS,

                    Plaintiff,

            v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

Case No. EDCV 13-2008 JC

MEMORANDUM OPINION

## I.   SUMMARY

On November 15, 2013, plaintiff Socorro Gallegos ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have consented to proceed before
the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; November 25, 2013 Case Management Order ¶ 5.

///

///

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On September 2, 2010, plaintiff filed an application for Disability Insurance Benefits.  (Administrative Record ("AR") 9, 129).  Plaintiff asserted that she became disabled on July 7, 2009, due to injury to her shoulder (*i.e.*, fracture, tear and fraying).  (AR 9, 156).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on August 30, 2012.  (AR 26-46).

On September 15, 2012, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 9-21).  Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments:  history of fracture right humerus in July 2009, mild osteoporosis, obesity, and mild tendinitis and arthritis in the right shoulder (AR 11); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 12); (3) plaintiff retained the residual functional capacity to perform less than a full range of light work (20 C.F.R. § 404.1567(b))[2] (AR 12-13); (4) plaintiff could perform her past relevant work as a medical assistant (AR 19-20); and (5) plaintiff's allegations regarding her limitations were not credible to the extent

_____

[1]The harmless error rule applies to the review of administrative decisions regarding disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of application of harmless error standard in social security cases) (citing, *inter alia*, Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

[2]Specifically, the ALJ determined that plaintiff:  (i) could lift, carry, push and/or pull twenty pounds occasionally and ten pounds frequently; (ii) could stand and/or walk six hours in an eight-hour workday; (iii) could sit six hours in an eight-hour workday; and (iv) was limited to occasional reaching above the shoulder with the dominant right upper extremity.  (AR 12-13)

1  they were inconsistent with the ALJ's residual functional capacity assessment
2  (AR 14).

3       The Appeals Council denied plaintiff's application for review.  (AR 1).

4  **III.    APPLICABLE LEGAL STANDARDS**

5       **A.    Sequential Evaluation Process**

6       To qualify for disability benefits, a claimant must show that the claimant is
7  unable "to engage in any substantial gainful activity by reason of any medically
8  determinable physical or mental impairment which can be expected to result in
9  death or which has lasted or can be expected to last for a continuous period of not
10 less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)
11 (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The
12 impairment must render the claimant incapable of performing the work the
13 claimant previously performed and incapable of performing any other substantial
14 gainful employment that exists in the national economy.  Tackett v. Apfel, 180
15 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

16      In assessing whether a claimant is disabled, an ALJ is to follow a five-step
17 sequential evaluation process:

18      (1)    Is the claimant presently engaged in substantial gainful activity?  If
19             so, the claimant is not disabled.  If not, proceed to step two.

20      (2)    Is the claimant's alleged impairment sufficiently severe to limit
21             the claimant's ability to work?  If not, the claimant is not
22             disabled.  If so, proceed to step three.

23      (3)    Does the claimant's impairment, or combination of
24             impairments, meet or equal an impairment listed in 20 C.F.R.
25             Part 404, Subpart P, Appendix 1?  If so, the claimant is
26             disabled.  If not, proceed to step four.

27 ///
28 ///

3

(4)     Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

4

1   evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland v.</u>

2   <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d

3   953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

4   or reversing the ALJ's conclusion, a court may not substitute its judgment for that

5   of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

6   **IV.  DISCUSSION**

7   　　Plaintiff contends that a reversal or remand is warranted because the ALJ

8   failed properly to evaluate the opinions of plaintiff's treating physicians –

9   specifically Drs. Samir Gopi Tejwani, H. Rahman, and Guirguis S. Hanna.

10  (Plaintiff's Motion at 2-9) (citing AR 645, 656-59 [Dr. Hanna]; AR 631 [Dr.

11  Tejwani]; AR 445-54, 472-73 [Dr. Rahman]).  For the reasons discussed below,

12  the Court disagrees.

13  　　**A.    Pertinent Law**

14  　　In Social Security cases, courts employ a hierarchy of deference to medical

15  opinions depending on the nature of the services provided.  Courts distinguish

16  among the opinions of three types of physicians:  those who treat the claimant

17  ("treating physicians") and two categories of "nontreating physicians," namely

18  those who examine but do not treat the claimant ("examining physicians") and

19  those who neither examine nor treat the claimant ("nonexamining physicians").

20  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

21  treating physician's opinion is entitled to more weight than an examining

22  physician's opinion, and an examining physician's opinion is entitled to more

23  weight than a nonexamining physician's opinion.[3]  <u>See id.</u>  In general, the opinion

24  of a treating physician is entitled to greater weight than that of a non-treating

25

26  　　[3]<u>Cf.</u> <u>Le v. Astrue</u>, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to

27  draw bright line distinguishing treating physicians from non-treating physicians; relationship is
    better viewed as series of points on a continuum reflecting the duration of the treatment

28  relationship and frequency and nature of the contact) (citation omitted).

physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

///

///

///

6

### B.    Analysis

#### 1.    Dr. Hanna

In an Industrial Work Status Report and related progress notes dated July 10, 2012, Dr. Hanna, among other things, diagnosed plaintiff with closed fracture of the humerus, greater tuberosity, frozen shoulder, and impingement syndrome of the shoulder, and stated that from July 10, 2012 through August 16, 2012 plaintiff's home activity and (if available) work activity needed to be "modified" as follows:  "Reach above right shoulder:  Not at all. [¶]  Lift/carry/push/pull no more than 10 pounds" ("Dr. Hanna's Opinions").  (AR 645, 659).  Plaintiff claims that the ALJ's rejection of Dr. Hanna's Opinions was "legally flawed."  (Plaintiff's Motion at 5-6).  The Court disagrees.

First, the ALJ properly rejected Dr. Hanna's Opinions as inconsistent with the physician's own notes and the record as a whole.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation and internal quotation marks omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]").  As the ALJ noted, before plaintiff began seeing Dr. Hanna, plaintiff had not sought treatment for her shoulder for almost a year and a half (i.e., from January 31, 2011 to July 12, 2012).  (AR 523, 656-57).  Dr. Hanna's minimal treatment notes reflect that once plaintiff began seeing Dr. Hanna (i.e., on July 12, 2012, less than two months before the administrative hearing), Dr. Hanna's findings on physical examination did not support the significant functional limitations identified in Dr. Hanna's Opinions.  For example, although plaintiff exhibited some "decreased range of motion, tenderness, and pain," Dr. Hanna found "no bony tenderness, no swelling, no effusion and no deformity" in

7

1   plaintiff's right shoulder.  (AR 16) (citing Exhibit 13F at 9 [AR 657]).  (AR 657).

2   Moreover, although plaintiff was scheduled for shoulder surgery on October 18,

3   2012, plaintiff's treatment in the interim was "generally routine and conservative"

4   – *i.e.*, "modified activity" and mild pain medication (*i.e.* Motrin and Flexeril).

5   (AR 19, 645-48, 656-59, 681-82, 687-88, 709-15, 738-40).  Thus, substantial

6   evidence supported the ALJ's conclusion that plaintiff's course of treatment "[was

7   not] consistent with what one would expect" if plaintiff was totally disabled as Dr.

8   Hanna suggested.  (AR 16, 19); cf. Rollins v. Massanari, 261 F.3d 853, 856 (9th

9   Cir. 2001) (ALJ properly rejected a treating physician's opinion who prescribed

10   conservative treatment and where the plaintiff's activities and lack of complaints

11   were inconsistent with the physician's disability assessment).

12           To the extent plaintiff argues that the ALJ was obligated to recontact Dr.

13   Hanna for clarification of the doctor's opinion, such an argument lacks merit.  An

14   ALJ has an affirmative duty to assist the claimant in developing the record at

15   every step of the sequential evaluation process.  Bustamante, 262 F.3d at 954; see

16   also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty

17   fully and fairly to develop record and to assure that claimant's interests are

18   considered).  The ALJ's duty is triggered only "when there is ambiguous evidence

19   or when the record is inadequate to allow for proper evaluation of the evidence."

20   Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted).

21   Here, the ALJ's duty to develop the record further was not triggered.  Plaintiff

22   does not credibly argue that the evidence of plaintiff's impairments is ambiguous,

23   or that the record as a whole was inadequate to allow for proper evaluation of the

24   evidence.  To the contrary, as noted below, the record contains medical opinions

25   from state agency examining and reviewing physicians on which the ALJ properly

26   relied to assess plaintiff's residual functional capacity and determine disability.

27   (AR 17-18) (citing Exhibits 5F [AR 495-500], 6F [AR 502-06], 11F [AR 642-43]).

28   ///

Second, plaintiff argues that the ALJ erred by rejecting Dr. Hanna's Opinions based on the "possibility" that Dr. Hanna provided opinions out of sympathy for plaintiff.  (Plaintiff's Motion at 8-9) (citing AR 18-19).  The Court finds that the alleged error, if any, was harmless because the ALJ provided other clear and convincing reasons which, without more, were sufficient to reject Dr. Hanna's Opinions.  See Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) (error in ALJ's failure properly to consider medical opinion evidence considered harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. . . .") (citing Stout, 454 F.3d at 1055).

Third, the ALJ properly rejected Dr. Hanna's Opinions in favor of the conflicting opinions of the state agency examining physician, Dr. Bunsri T. Sophon (who found no functional limitations beyond those already accounted for in the ALJ's residual functional capacity assessment), and the state agency reviewing physicians (whose residual functional capacity assessment the ALJ adopted).  (AR 17-18, 495-500, 502-06, 642-43).  The opinion of Dr. Sophon was supported by the physician's independent examination of plaintiff, and thus, even without more, constituted substantial evidence upon which the ALJ could properly rely to reject Dr. Hanna's Opinions.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  The opinions of the state agency reviewing physicians also constitute substantial evidence supporting the ALJ's decision since they are consistent with the examining physicians' opinions and underlying independent examination, as well as the other medical evidence in the record.  See Tonapetyan, 242 F.3d at 1149 (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in

9

1   the record); <u>Andrews</u>, 53 F.3d at 1041 ("reports of the nonexamining advisor need
2   not be discounted and may serve as substantial evidence when they are supported
3   by other evidence in the record and are consistent with it").

4        Finally, as the ALJ also noted, Dr. Hanna's treatment records did not reflect
5   any functional limitations that were more restrictive than those assessed in the
6   ALJ's residual functional capacity assessment and which also met the durational
7   requirement (*i.e.*, "limitations for twelve continuous months [greater] than
8   assessed in [the ALJ's] decision").  (AR 16) (citing Exhibit 13F at 8-12 [AR 656-
9   60]); <u>see</u> 42 U.S.C. § 423(d)(1)(A); <u>cf.</u> <u>Matthews v. Shalala</u>, 10 F.3d 678, 680 (9th
10  Cir. 1993) (in upholding the Commissioner's decision, the Court emphasized:
11  "None of the doctors who examined [claimant] expressed the opinion that he was
12  totally disabled").  For example, the treatment notes plaintiff provided from Dr.
13  Hanna document only two, one-month periods during which Dr. Hanna imposed
14  "modified activity" for plaintiff (*i.e.*, July 10, 2012 through August 16, 2012, and
15  August 16, 2012 through September 13, 2012).  (AR 645, 659, 710).  Thus, the
16  ALJ was ultimately not required to provide any further explanation for rejecting
17  Dr. Hanna's Opinions.  <u>See</u> <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir.
18  1984) (An ALJ must provide an explanation only when he rejects "significant
19  probative evidence.") (citation omitted).

20        Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

21            **2.    Dr. Rahman**

22        In connection with a March 25, 2010 Initial Orthopedic Consultation which
23  included a physical examination of plaintiff, Dr. Rahman, a treating physician for
24  plaintiff's workers' compensation case, diagnosed plaintiff with impingement
25  syndrome, subacromial bursitis, rotator cuff tear, and osteoarthritis
26  acromioclavicular joint all of the right shoulder, and among other things, opined
27  that "[plaintiff's] condition ha[d] not reached maximal medical improvement
28  level."  (AR 445-454; <u>see</u> AR 452).  In the report of a May 6, 2010 Orthopedic Re-

10

1   Evaluation, Dr. Rahman diagnosed plaintiff with several similar right shoulder

2   impairments and opined that plaintiff was "temporarily totally disabled" and that,

3   absent right shoulder arthroscopic examination and surgery with repair of the

4   SLAP lesion, Dr. Rahman "[did] not feel that [plaintiff would] be able to return to

5   her prior work duties" ("Dr. Rahman's Opinions").  (AR 472-73).  Plaintiff argues

6   that the ALJ failed properly to consider Dr. Rahman's Opinions.  (Plaintiff's

7   Motion at 5-9).  The Court disagrees.

8        First, to the extent plaintiff suggests that the ALJ "ignore[d]" Dr. Rahman's

9   Opinions (Plaintiff's Motion at 7-8), the record belies such a suggestion.  As

10  plaintiff notes, an ALJ may not ignore a medical opinion merely because it was

11  issued in a workers' compensation context.  See Booth v. Barnhart, 181 F. Supp.

12  2d 1099, 1104 (C.D. Cal. 2002) (citing Macri v. Chater, 93 F.3d 540, 544 (9th Cir.

13  1996); Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576

14  (9th Cir. 1988)).  An ALJ must evaluate the objective medical findings in such a

15  medical opinion in the same manner as for any other medical opinion evidence,

16  while also recognizing the pertinent distinctions between California workers'

17  compensation and Social Security disability cases.  Id.; cf. Desrosiers, 846 F.2d at

18  576 (finding ALJ interpretation of treating physician's opinion erroneous where

19  record clear that ALJ affirmatively failed to consider distinction between

20  categories of work under social security disability scheme versus workers'

21  compensation scheme).  Here, the ALJ did just that.  (AR 18).

22       Second, the ALJ properly rejected Dr. Rahman's conclusory statements that

23  plaintiff was "disabled" under workers' compensation law and that she would

24  "[not] be able to return to her prior work duties."  (AR 473).  Opinions that

25  plaintiff is disabled or unable to work are not binding on the Commissioner.  See

26  Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008) ("[The]

27  determination of a claimant's ultimate disability is reserved to the Commissioner

28  . . . a physician's opinion on the matter is not entitled to special significance.");

1   Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating
2   physician's opinion is generally afforded the greatest weight in disability cases, it
3   is not binding on an ALJ with respect to the existence of an impairment or the
4   ultimate determination of disability.") (citation omitted); 20 C.F.R.
5   § 404.1527(d)(1) ("We are responsible for making the determination or decision
6   about whether you meet the statutory definition of disability. . . .  A statement by a
7   medical source that you are 'disabled' or 'unable to work' does not mean that we
8   will determine that you are disabled.").  Moreover, contrary to plaintiff's
9   contentions otherwise, since the ALJ did not say that the bases for Dr. Rahman's
10  Opinions were unclear, as discussed above with respect to Dr. Hanna, the ALJ was
11  not obligated to recontact Dr. Rahman for clarification.  See Mayes, 276 F.3d at
12  459-60 (citation omitted); see also Social Security Ruling 96-5F at *2 (ALJ
13  "[must] make every reasonable effort to recontact [physician who provided]
14  opinions on issues reserved to the Commissioner" where "the bases for such
15  opinions are not clear []."") (emphasis added); Bayliss, 427 F.3d at 1217 (ALJ has
16  not duty to recontact doctor unless opinion is ambiguous or medical evidence as a
17  whole is insufficient for ALJ to make a disability determination) (citations
18  omitted).

19        Third, the ALJ properly rejected Dr. Rahman's Opinions in favor of the
20  conflicting opinions of the state agency examining and reviewing physicians
21  discussed above.  See, e.g., Tonapetyan, 242 F.3d at 1149; Andrews, 53 F.3d at
22  1041.

23        Finally, to the extent the ALJ's other reasons for rejecting Dr. Rahman's
24  Opinions (i.e., possible bias or brevity of treatment relationship) were somehow
25  inadequate, the Court finds any alleged error harmless because the ALJ provided
26  another clear and convincing reason which, on its own, was sufficient to reject Dr.
27  Rahman's Opinions.  See Sawyer, 303 Fed. Appx. at 455 (citation omitted).

28        Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

### 3. Dr. Tejwani

In an October 9, 2009 treatment note, Dr. Samir Gopi Tejwani, another treating physician for plaintiff's workers' compensation case (i) noted that plaintiff complained of persistent shoulder pain with movement, that "frozen shoulder has developed," that plaintiff "[could not] do therapy due to pain"; (ii) recommended that plaintiff undergo "serial injections as needed" and physical therapy "within the limits of pain"; and (iii) opined that plaintiff should "[not] return to work until range of motion is restored and pain is resolved" ("Dr. Tejwani's Opinion").  (AR 631-32).

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Tejwani's Opinion.  The Court finds that a reversal or remand on this basis is not warranted for essentially the same reasons discussed above with respect to Dr. Rahman.

## V.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   April 30, 2014

_____
                    /s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

13